FILED

2017 Aug-31  AM 11:27
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| Irene Johnson, Raymond Fuller, Catherine Headen, Linda Green, Rose Crowder | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No:_____ |
| | ) ) | JURY DEMAND |
| v. | ) ) | |
| Housing Authority Birmingham District, City of Birmingham, Southside Redevelopment Group, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiffs and files this lawsuit alleging various causes of action against the Defendants as follows:

## INTRODUCTION

1. This action seeks monetary, declaratory, and injunctive relief against

   Defendants for discriminating against Plaintiffs in the operation of the

   Southtown Court Public Housing Community ("Southtown") located

   at 2501 University Boulevard, Birmingham, Alabama, 35205 based

   upon national origin, race, color, disability and familial status in

   violation of the federal Fair Housing Act, 42 U.S.C. § 3601 et. seq.,

1866 Civil Rights Act (Section 1982), and the Alabama Fair Housing Law, Ala. Code §24-8-1 et. seq.

2.  Defendants, Housing Authority Birmingham District and City of Birmingham, receive federal funds including the Choice Neighborhoods Grant, and are required to comply with provisions of the Fair Housing Act, 42 U.S.C. §3601 *et seq.,* including the requirement of 42 U.S.C. §3608(e)(5) that they affirmatively further fair housing to the maximum extent possible. They are obligated to comply with applicable federal laws and requirements including the affirmatively furthering fair housing requirements of Section 104(b)(2) thereof [42 U.S.C. § 5304(b)(2)]. As an applicant for said federal funds, Defendants were required to certify – as a material condition of its and its consortium partners' eligibility to receiving such funds that it was furthering, and would affirmatively further, fair housing. Included in these requirements was the obligation to conduct an analysis of the impediments to fair housing choice within its jurisdiction, and the obligation to take appropriate actions to overcome the effects of any impediments identified through that analysis.

3.  "The mission of HABD is to be the leader in making available

excellent, affordable housing for low and moderate-income persons through effective management and wise stewardship of public funds. HABD will also partner with our residents and others to enhance the quality of life in our communities." See https://www.habd.org on August 18, 2017.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §, 1331, 1343(4), and §2201 and/or 42 U.S.C. §3613 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts. Plaintiffs' state law claims are related to Plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution. Additionally, this action arises under the 31 U.S.C. §§ 3729 et seq. ("the False Claims Act").

5. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because the conduct proscribed by the False Claims Act and

complained of herein took place in this District, and is also proper pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because the acts and omissions complained of herein occurred in this District, and because, at all times material and relevant, defendant resided in and transacted business in this District.

6. As required by 31 U.S.C. § 3130 (b)(2), Plaintiffs have provided to the Attorney General and to the United States Attorney for the Northern District of Alabama a statement of material evidence and information that Plaintiffs possess regarding this complaint. Because the statement includes attorney-client communications and work product of Plaintiffs' counsel, and was submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in this litigation, the Plaintiffs understand this statement to be confidential.

## **PARTIES**

7. Plaintiff, Irene Johnson, serves as President of the Southside Neighborhood Association and Resident Council President of the Tenant Council in Southtown, and is a resident of Southtown. Johnson is Black/African American and disabled.

8. Plaintiff, Raymond Fuller, is Black/African American and is a veteran of the United States Army and a resident of Southtown.

9. Plaintiff, Catherine Headen, is Black/African American and is disabled. For over thirty (30) years, Headen has remained a resident of Southtown.

10. Plaintiff, Linda Green, is Black/African American and is a recent graduate of Brown Mackie college and is a resident of Southtown.

11. Plaintiff, Rose Crowder, is Black/African American and is a veteran of the United States Army and a grandmother and guardian of her granddaughter, who is eleven (11) years old. Ms. Crowder is a resident of Southtown.

12. The Defendant, Housing Authority of Birmingham District ("HABD") is a Section 8 and Public Housing Agency and is located in the jurisdiction of the Northern District.

13. The Defendant, City of Birmingham, is a municipal corporation and is located in the jurisdiction of the Northern District.

14. The Defendant, Southside Redevelopment Group (a.k.a. Bayer Properties, LLC, a.k.a Southside Development Group, hereinafter referred to as "Southside Redevelopment" or "Southside Development"), is a commercial real estate conglomerate and is

located within the jurisdiction of the Northern District. The Southside Redevelopment Company is a private development partner of the Housing Authority of the Birmingham District, contracted to participate in the overhaul of the Southtown Court housing project as a "mixed-use, mixed-income community." The company is a joint venture of Corporate Realty, Bayer Properties, Brasfield & Gorrie, A. G. Gaston Construction, SPM Property Management, BREC Development and the Benoit Group of Atlanta, Georgia. It was formed in 2016 and registered as a "foreign limited liability company" with the Alabama Department of State. It shares a mailing address with Bayer Properties at 2222 Arlington Avenue.

15. The Defendants are engaged in the business of renting, leasing, advertising, managing, constructing, and/or otherwise governing the provision of public housing.

16. Elected officials, appointed officials, principals, executive officers, office managers, office staff, maintenance staff, security personnel, and employees for the aforementioned Defendants act as employees, agents, or representatives of Defendants in doing the acts or in omitting to act as alleged in this Complaint, and said employees or representatives acted within the course and scope of his or her actual

or apparent authority pursuant to such agency or employment; or the alleged acts or omissions of such employees or representatives were subsequently ratified and adopted by Defendants as principals.

## FACTS

17. Defendants, acting individually and in concert with others, directly and through their employees or agents, have engaged in intentional discrimination and disparate discriminatory treatment against Plaintiffs and a pattern or practice of discrimination with a disparate impact against families with children, including Plaintiffs, on account of national origin, race, color, disability and familial status in the operation of the Southtown community and the proposed redevelopment processes. Defendants continue to engage in such acts and a pattern or practice of discrimination so as to constitute a continuing violation. (See Exhibits 1 & 3)

18. Plaintiffs have lived in the Southtown community at all times relevant to this case, and continue to live at Southtown within their respective apartment units.

19. Southtown Court or the Southtown Housing Community ("Southtown") is a 455-unit housing project owned and managed by the Housing Authority of the Birmingham District.

20. Southtown, located on a 26-acre site, is bounded by 23rd Street South to the west, 10th Avenue South to the south, Red Mountain Expressway to the east and University Boulevard to the north. Southtown is located between UAB and St. Vincent's Hospital, is 12-15 minutes from the airport and within a 10-12 minute walk of both Highland Park and Forest Park. Today the undeveloped real property alone is valued over twenty six ($26) million dollars.

21. The original construction of Southtown was completed in 1941 for a cost of $1,977,233.23 and the US Housing Authority provided funding.

22. Between 2001-2003 the Southtown housing units were renovated at a cost of $15 million dollars but apparently no other major renovations have occurred.

23. Currently, there are approximately one thousand (1000) people living in Southtown. The residents of Southtown are 99% black, African American or otherwise of Asiatic descent. Many are disabled. Some are veterans and even more are single parent households.

24. The City of Birmingham has a population of 212,157 residents. Well over seventy percent (70%) of the City's population is Black or African American.

25. The City of Birmingham is one of the top ten most segregated cities in the United States.

26. Ironically, the Birmingham campaign to end segregation in the city in the early 1960s was led by Fred L. Shuttlesworth and Martin Luther King, Jr. At the time, the events in the city were pivotal in leading to the Civil Rights Act of 1964.

27. More than half of all Birmingham residents live in neighborhoods that are overwhelmingly of the same race, compared to just 31.2% of those living in large metropolitan areas.

28. Social and economic inequality along racial lines tends to be more common in segregated cities. In Birmingham, 11.8% of white residents live in poverty, compared to 27.6% of black Birmingham residents. Just 3.7% of Birmingham's white workers are unemployed, which is roughly one-fourth the metropolitan area's black unemployment rate of 14.5%. – Source: *24/7 Wall St. analysis of US Census Bureau data*.

29. There is a clear trend in the national research on mixed-income housing, the local history of Birmingham, and the new development in Southtown that the logic of "highest and best use" is being utilized to create "low-income housing." This logic is inappropriate for low-

income housing/fair housing, leads to unfair & discriminatory housing practices, and causes displacement. The implementation focuses on market mechanisms to address distressed neighborhoods with the goal of increasing property values in surrounding communities. (See Exhibit 1).

30. Moreover, it is clear that today's segregated communities are, *inter alia*, a relic of the days of overt white supremacist ideologies and racial discrimination of days past.

31. In 2008, former Mayor Larry Langford proposed partnering with Daniels Corporation and Magic Johnson Enterprises to renovate Southtown, but in 2009 the Housing Authority Board District (HABD) rejected the plans of former mayor Larry Langford. Then, in 2015, HABD announced that they would apply for a $30 million dollar HUD Choice Neighborhoods grant pursuant to the Choice Neighborhoods program.

32. The Choice Neighborhoods program is a competitive grant program dedicated to improving distressed public or HUD-assisted housing and transforming high-poverty neighborhoods into sustainable communities.  It focuses on three core strategies:

a) replacing distressed housing with quality, well-maintained, mixed-income housing;

b) improving educational opportunities and outcomes by providing support and services to families; and

c) creating an atmosphere conducive to reinvestment in the community in both the public and private sector. The implementation of these strategies has been correlated with reduced poverty, crime, and unemployment as well as increased property value, income, and business development in poverty-stricken areas. (See Exhibit 2).

33. Even though the HABD initially announced that it would submit a grant pursuant to the above program, known as Choice Neighborhoods, the Plaintiffs, residents of Southtown, and other concerned citizens have seen little evidence that guidelines of the program have been followed and that federal monies have been allocated in accordance with said program. (See Exhibit 3)

34. On or about January 2017, the Housing Authority of Birmingham District (HABD) announced that they had selected Southside Development as a development partner for the Southtown Redevelopment Project (RFP 16-13). The principals in Southside

Development include Bayer Properties, Brasfield & Gorrie, and
Corporate Realty. The Southside Development principals have little
experience in constructing residential developments and Plaintiffs and
the residents of Southtown allege their interests have been
marginalized, their concerns ignored, and that the foregoing has
occurred for discriminatory purposes and constitutes an ongoing
violation of relevant civil rights law and fair housing laws listed
herein. Per the website for Bayer Properties/Southside
Redevelopment, "The commercial market has served as the
cornerstone of our company since its inception in 1964." (See
www.bayerproperties.com/ and Exhibit 4).

35. The failure of the Defendants to engage the residents and the greater
community is in violation of the Choice Neighborhoods program and
the Fair Housing Act and its' lack of transparency is readily apparent.

36. Moreover, the currently proposed redevelopment plan violates the
Fair Housing Act, increases displacement, and promotes housing
segregation in at least the following ways:

a.  There was no impact assessment performed and/or released
stating how the proposed redevelopment would affect

segregation within the City of Birmingham (egs. Resident displacement, closing of Avondale Elementary, etc);

b.  There have been no meaningful meetings or inclusion of the current Southtown residents in the planning process that would ensure their interests are taken into account and furthered;

c.  HABD, City of Birmingham, and the proposed redevelopers have failed to adhere to their respective affirmative duties to further fair housing and the mission of the Fair Housing Act;

d.  Even though, the proposed redevelopment of Southtown is easily a 1 billion dollar development project and relies upon and substantially incorporates federal funding/resources, the current proposal does not address issues such as the wealth gap, poverty rate, and unemployment of city residents that have plagued Birmingham for decades;

e.  The current process failed to give fair or equal consideration to proposals submitted by black and/or "minority" general contractors (i.e. Bloc Global) thereby violating applicable federal laws;

    f.  The current proposal/process misallocated and/or under-utilized federal funds/resources and further failed to comply with applicable funding programs. (See Exhibit 3).

37. The bidding process and/or Request for Proposals (see RFP 16-13/ Request for Proposal: Developer Partner for the Southtown Court Redevelopment, Housing Authority Birmingham District) process conducted by Defendants HABD and City of Birmingham was riddled with improprieties and constitutes an ongoing violation of fair housing laws for at least the following reasons:

    a)  The initial solicitation/RFP was amended with several different options without cause or justification;

    b)  Other developers having more experience in managing public housing residential redevelopments submitted proposals more in line with the Choice Neighborhoods program but were rejected without justification. (See Exhibit 5).

38. Principals of the Southside Redevelopment group along with City of Birmingham officials and representatives of HABD have engaged in a pattern or practice of discrimination in the provision of housing and the assignment of the contract for the proposed Southtown redevelopment in at least the following ways:

a)  withholding critical information from residents of Southtown

regarding the proposed redevelopment related to the:

i. availability for homeownership/voucher programs,

ii. ability to return to Southtown after the redevelopment,

iii. lack of implementation of the Choice Neighborhoods

program guidelines and condition precedents.

b)  holding redevelopment planning meetings at locations that are

difficult for Plaintiffs to access,

c)  amending RFP16-13 without just cause and, upon information

and belief, for the sole purpose of providing an improper

benefit to the Southside Redevelopment Group and Bayer

Properties, LLC. (See Exhibit 3, 4, 5)

39. In violating various civil rights laws and fair housing laws, the

Defendants have also misallocated public federal dollars for purposes

of private personal economic gain and other pecuniary benefits.

40. Moreover, based upon information and belief, the Choice

Neighborhood Grant and other similar federal funding have been

awarded to Defendants, City of Birmingham and/or HABD, but said

funding has not been allocated for the stated purposes of said Choice

Neighborhood's program/applicable federal funding program.

41. The Southside Redevelopment Group (and/or Bayer Group, LLC) has not hired a qualified planner, has not met with the community, and further failed to affirmatively further fair housing in the planning and execution of the proposed redevelopment. (See Exhibit 3).

42. Defendants, HABD and City of Birmingham, were aware of the housing segregation reflected in the data throughout the false claims period.  (See Exhibit 1 - "Southtown; Highest and Best Use Development").

43. The currently proposed redevelopment plan submitted by Southside Redevelopment and approved by HABD and the City of Birmingham would have disparate impact upon African Americans causing a substantial number, if not all, current residents to be displaced from the current Southtown community.

44. The proposed redevelopment plan submitted by Southside Redevelopment and approved by HABD and the City of Birmingham would have a disparate impact upon African Americans and would further make the City of Birmingham more racially segregated. (See Exhibit 1).

45. The proposed redevelopment plan submitted by Southside Redevelopment and approved by HABD and the City of Birmingham

fails to affirmatively further fair housing and misallocates federal funds specifically allocated for the purposes of furthering fair housing core principles. (See Exhibit 1).

46. The proposed redevelopment plan submitted by Southside Redevelopment was approved by HABD and the City of Birmingham without the benefit of even a minimal impact analysis. An impact analysis would provide critical data to determining what type of redevelopment plan would most effectively create value for HABD and its' development partners while contemporaneously and affirmatively furthering fair housing (i.e. reducing segregation within City of Birmingham, namely for the south-side of the City, and promoting more public housing units within the proposed redevelopment or alternatively providing for an individualized relocation plan for each resident who chose not to return after the proposed redevelopment). (See Exhibit 2).

47. In contradiction to its' stated mission of providing "effective management and wise stewardship of public funds [and resources]" the proposed redevelopment plan submitted by Southside Redevelopment and approved by HABD and the City of Birmingham states HABD/City of Birmingham will essentially give away the 26

acre campus to the Southside Redevelopment group rather than

leasing the property under terms favorable to the HABD and the

public housing residents HABD is duty-bound to serve.

48. Throughout the false claims period, HABD and City of Birmingham

were aware that the supply of affordable housing was inadequate to its

needs.

49. Throughout the false claims period, HABD and City of Birmingham

were aware that there was strong resistance in certain neighborhoods

within Birmingham and in many surrounding municipalities to the

creation of affordable housing units.

50. Throughout the false claims period, HABD and City of Birmingham,

were aware that the unavailability of affordable housing and the

displacement of the current Southtown residents contributed to the

continued pattern of racial segregation in the City of Birmingham.

51. HABD and City of Birmingham's performance of its statutory,

regulatory, certification-based, and grant-required obligations in

respect to affirmatively furthering fair housing was so deficient or

non-existence to constitute the provision of worthless services.

52. In respect to all the certifications and requests for payment based on

supposed performance of its obligations referred to herein, HABD and

City of Birmingham acted with knowledge that the certifications were false and the basis for receipt of payments were false.

53. In the alternative, it is alleged that HABD and City of Birmingham acted in reckless disregard of the truth or falsity of the certifications it made. It is further alleged that HABD and City of Birmingham acted in reckless disregard of the truth or falsity of the explicit and implicit representations it made that it had and was complying with its various obligations to affirmatively further fair housing – representations made in order to secure payments from the United States.

54. As a result of City of Birmingham and HABD's failure to adhere to AFFH and other material conditions for receiving federal funds and moreover as a result of seeking payments based on the false premise that it had complied with the various fair housing obligations it had undertaken, City of Birmingham and HABD's have improperly received a sum of federal funds to be determined upon discovery.

**FIRST CLAIM**

**(Federal Fair Housing Act-Familial Discrimination)**

55. Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

56. Defendants have injured Plaintiffs in violation of the federal Fair

Housing Act (FHA) by committing the following discriminatory

housing practices:

a. Discriminating in the terms, conditions, and privileges of the

rental of a dwelling and in the provision of services or facilities

in connection therewith because of familial status in violation

of 42 U.S.C. §3604(b);

b. Making, printing, or publishing notices, statements or

advertisements, with respect to the rental of a dwelling that

indicates a preference, limitation, or discrimination based on

familial status or an intention to make any such discrimination

in violation of 42 U.S.C. §3604(c);

57. In doing the acts of which Plaintiffs complain, Defendants and their

agents and employees intentionally and recklessly violated Plaintiffs

civil rights.

## SECOND CLAIM

### (Federal Fair Housing Act-Race Discrimination)

58. Plaintiffs repeat, reallege, and incorporate by reference all of the

foregoing paragraphs.

59. Defendants have injured Plaintiffs in violation of the federal Fair

Housing Act (FHA) by committing the following discriminatory

housing practices:

   a. Discriminating in the terms, conditions, and privileges of the rental of a dwelling and in the provision of services or facilities in connection therewith because of race in violation of 42 U.S.C. §3604(b).

   b. Discriminating or otherwise making unavailable or denying, a dwelling to any person because of race in violation of 42 U.S.C. §3604(a). Illegal steering includes restricting the choices of a person by word or conduct, making unavailable or denying housing to persons, as well as assigning persons to a particular section of a development because of race. 24 C.F.R. §100.70.

60. In doing the acts of which Plaintiffs complain, Defendants and their agents and employees intentionally and recklessly violated Plaintiffs civil rights.

61. The loss of Southtown would have a disproportionate impact both on African-Americans in general and on low-income African-Americans in particular.

### THIRD CLAIM

### (Federal Fair Housing Act-Disability Discrimination)

62. Plaintiffs repeat, reallege, and incorporate by reference all of the

foregoing paragraphs.

63. Defendants have injured Plaintiffs in violation of the federal Fair

Housing Act (FHA) by committing the following discriminatory

housing practices:

    a. Discriminating in the terms, conditions, and privileges of the

       rental of a dwelling and in the provision of services or facilities

       in connection therewith because of disability in violation of 42

       U.S.C. §3604(b).

64. In doing the acts of which Plaintiffs complain, Defendants and their

agents and employees intentionally and recklessly violated Plaintiffs

civil rights.

## FOURTH CLAIM

### (Alabama Fair Housing Law-Familial Discrimination)

65. Plaintiffs repeat, reallege, and incorporate by reference all of the

foregoing paragraphs.

66. Defendants have injured Plaintiffs in violation of the Alabama Fair

Housing Law (AFHL) by committing the following discriminatory

housing practices:

    a. Discriminating in the terms, conditions, and privileges of the

       rental of a dwelling and in the provision of services or facilities

in connection with it because of familial status in violation of

Ala.Code § 24-84(2);

b.  Making, printing, or publishing notices, statements or

advertisements, with respect to the rental of a dwelling that

indicates a preference, limitation, or discrimination based on

familial status or an intention to make any such discrimination

in violation of Ala.Code § 24-84(3);

67. In doing the acts of which Plaintiffs complain, Defendants and their

agents and employees intentionally and recklessly violated Plaintiffs

civil rights.

## FIFTH CLAIM

### (Alabama Fair Housing Law-Race Discrimination)

68. Plaintiffs repeat, reallege, and incorporate by reference all of the

foregoing paragraphs.

69. Defendants have injured Plaintiffs in violation of the Alabama Fair

Housing Act (AFHL) by committing the following discriminatory

housing practices:

a.  Discriminating in the terms, conditions, and privileges of the

rental of a dwelling and in the provision of services or facilities

in connection therewith because of race in violation of

Ala.Code § 24-8-4(2).

70. Discriminating or otherwise making unavailable or denying a dwelling to any person because of race in violation of Ala. Code. § 24-8-4(1).

71. In doing the acts of which Plaintiffs complain, Defendants and their agents and employees intentionally and recklessly violated Plaintiffs civil rights.

## SIXTH CLAIM

### (Alabama Law-Negligence)

72. Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

73. Defendants owe Plaintiffs a duty to operate Southtown in a manner that is free from unlawful discrimination, and to hire, train, supervise, and discipline their employees and themselves to fulfill that duty. Defendants negligently violated that duty by discriminating against Plaintiffs and families with children on account of their national origin, race, color, disability and familial status. Defendants' violation of that duty was the result of negligence, including, but not limited to:

    a.  Defendants' negligent failure to hire persons who were familiar with the requirements of federal and Alabama fair housing

laws;

b.  Defendants' negligent failure to train their employees and themselves regarding the requirements of federal and Alabama fair housing laws;

c.  Defendants' negligent failure to train their employees regarding compliance with the requirements federal and Alabama fair housing laws; and

d.  Defendants' negligent failure to discipline or terminate employees who failed to comply with the requirements of federal and Alabama fair housing laws.

74. As a legal result of Defendants' negligent conduct, Plaintiffs have suffered threats to and violation of their civil rights, deprivation of the full use and enjoyment of their tenancy, invasion of the right of occupancy, and physical and emotional distress.

## SEVENTH CLAIM

### (False Claims Act)

75. Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

76. On each occasion that Defendants HABD and City of Birmingham made a certification of compliance with relevant federal laws and

requirements as described herein, the total number of which during

the false claims period is not currently known to Plaintiffs, and on

each occasion that Defendants HABD and City of Birmingham

otherwise requested or demanded payment from the federal

government based on having supposedly complied with the Fair

Housing Act and with its certification-based obligations, it committed

a separate violation of the False Claims Act, 31 U.S.C. § 3729 et seq.

## EIGHTH CLAIM

### (Section 504 of the Rehabilitation Act-Disability Discrimination)

77. Plaintiffs repeat, reallege, and incorporate by reference all of the
    foregoing paragraphs.

78. Defendants have injured Plaintiffs in violation of Section 504 of the
    Rehabilitation Act by committing the following discriminatory
    practices:

   c.  Denying or excluding individuals with disabilities the
       opportunity to participate in, or benefit from, the housing, aid,
       benefit, service or otherwise subjecting to discrimination in
       violation of 29 U.S.C. § 794; 24 C.F.R. § 8.4.

   d.  Denying or excluding individuals with disabilities the benefits
       of, or participation in, or otherwise subjecting to discrimination

under any program or activity that receives Federal financial

assistance because facilities were inaccessible or unusable in

violation of 29 U.S.C. § 794; 24 C.F.R. § 8.20.

79. In doing the acts of which Plaintiffs complain, Defendants and their

agents and employees intentionally and recklessly violated Plaintiffs

civil rights.

## NINTH CLAIM

### (Title II of the Americans with Disabilities Act -Disability Discrimination)

80. Plaintiffs repeat, reallege, and incorporate by reference all of the

foregoing paragraphs.

81. Defendants have injured Plaintiffs in violation of Title II of the

Americans with Disabilities Act by committing the following

discriminatory practices:

e. Denying or excluding individuals with disabilities the

opportunity to participate in, or benefit from, the aid, benefit,

service or otherwise subjecting to discrimination in violation

of  42 U.S.C. § 12132; 35 C.F.R. § 35.130

f. Denying or excluding individuals with disabilities from

participation in, or the benefits of the services, programs,

activities of a public entity or otherwise subjecting to

discrimination because its facilities are inaccessible or unusable

in violation of 42 U.S.C. § 12132; 28 C.F.R. § 35.149.

82. In doing the acts of which Plaintiffs complain, Defendants and their

agents and employees intentionally and recklessly violated Plaintiffs

civil rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of judgment against Defendants
that:

1. Awards compensatory and punitive damages;

2. Declares that Defendants have violated the provisions of the
   applicable federal and Alabama fair housing laws;

3. Enters temporary, preliminary and permanent injunctive relief
   enjoining all unlawful practices complained about herein and
   imposing affirmative injunctive relief requiring Defendants, and their
   partners, agents, employees, assignees, and all persons acting in
   concert or participating with them, to take affirmative action to
   provide equal housing opportunities to all residents and prospective
   residents regardless of national origin, race, color, familial status, and
   disability;

4. Awards costs of suit herein incurred, including reasonable attorneys'
   fees;

5. Awards damages in the amount of three times the damages sustained
   by the United States because of the false claims alleged within the
   Complaint, as provided by the False Claims Act, 31 U.S.C. §§ 3729 et
   seq.;

6.      That civil penalties of $10,000 be imposed for each and every false claim that defendants presented to the United States;

7.      That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Plaintiffs necessarily incurred in commencing and prosecuting this case;

8.      That the Court grant permanent injunctive relief to prevent any recurrence of the violations of the False Claims Act for which redress is sought in this case; and

9.      Awards all such other and further relief as the court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Done this the 30th day of August, 2017.


s/April H. Collins
_____
April H. Collins
Attorney for Plaintiffs and Residents of Southtown
Collins Law, LLC
One Chase Corporate Center
Suite 400
Birmingham, Alabama 35244
(205) 588-1411
ACollins@ACollinsLaw.com


s/Richard A. Rice
_____
Richard A. Rice

Richard A. Rice
Attorney for Plaintiffs and Residents of Southtown
The Rice Firm, LLC

N. 420 20th Street
Birmingham, Alabama 35201
Suite 2200
205.618.8733
rrice@rice-lawfirm.com

**PLEASE SERVE THE DEFENDANT AT THE ADDRESS BELOW**:

SOUTHSIDE REDEVELOPMENT
c/o Bayer Properties, LLC
CT Corporation System– registered agent
2 North Jackson St., Suite 605
Montgomery, AL 36104

CITY OF BIRMINGHAM
c/o City Clerk
710 20th Street North #205
Birmingham, AL 35203

HOUSING AUTHORITY BIRMINGHAM DISTRICT
Attn. Michael Lundy
1826 3rd Avenue South
Birmingham, AL 35233

CC: (By Plaintiff)

United States Department of Housing and Urban Development
Ben Carson, Secretary
451 Seventh Street South West
Washington, DC 20410

Robert O. Posey, *Esq.*
United States Attorney for the Northern District of Alabama
Birmingham Office
1801 4th Avenue North
Birmingham, Alabama 35203

Jeffrey A. Bayer, President and CEO
David L. Silverstein, Principal
Bayer Properties, LLC

2222 Arlington Avenue
Birmingham, AL 35205
abeans@bayerproperties.com
abeans@bayerproperties.com

**JURY DEMAND**