# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **IRENE JOHNSON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number: |
| | ) | **2:17-cv-01474-AKK** |
| **HOUSING AUTHORITY** | ) | |
| **BIRMINGHAM DISTRICT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Irene Johnson, Raymond Fuller, Catherine Headen, Linda Green, and Rose Crowder are residents of Southtown Court Public Housing Community ("Southtown") in Birmingham, Alabama. They seek declaratory and injunctive relief and damages against the Housing Authority of Birmingham District ("HABD"), the City of Birmingham (the "City"), and Southside Development Company, LLC ("Southside") based on allegations that the defendants have discriminated against them in the proposed redevelopment of Southtown and retaliated against them for exercising rights under federal and state fair housing laws. Doc. 22. The plaintiffs moved for a temporary restraining order and preliminary injunction to prevent the defendants from proceeding with

redevelopment plans at Southtown, *see* doc. 2, and the defendants moved to dismiss this action, docs. 25; 28; 29.[1]  The motions are fully briefed and ripe for review.  *See* docs. 3; 26; 28; 29; 33; 39; 41.  Because Article III of the U.S. Constitution limits federal court jurisdiction to actual "cases" and "controversies," U.S. CONST. art III, § 2, and because the plaintiffs' challenge to the proposed redevelopment rests upon contingent future events that may or may not occur and, as such, is not yet ripe for adjudication, *see Texas v. United States,* 523 U.S. 296, 300 (1998), for the reasons stated more fully below, the defendants' motions to dismiss, docs. 25; 28; 29, are due to be granted, and the plaintiffs' motion for injunctive relief, doc. 2, is due to be denied.

## I.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  "Nor does

---

[1] Also pending before the court are HABD's motion for leave to exceed the court's page limitation by a single page, doc. 27, which is due to be granted, and the plaintiffs' motion to strike, doc. 34, which is due to be denied, as discussed below.

a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, the line between possibility and plausibility is a thin one, and making such a determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When considering a motion to dismiss under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

A motion to dismiss based on ripeness implicates Federal Rule of Civil Procedure 12(b)(1), which authorizes a motion to dismiss based on the defense that the court lacks subject-matter jurisdiction. "Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citation omitted). Facial attacks to jurisdiction are based on the allegations in the complaint, which the court must take as true in deciding whether to grant the motion. *Id.* "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleading," and the court may consider extrinsic evidence when deciding a factual attack to jurisdiction. *Id.* In such a case, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 925 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

## II.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND[2]

Southtown is a 455-unit housing project that is owned and managed by HABD and located on twenty-six acres near downtown Birmingham. Docs. 22 at ¶¶ 18-19; 1-2 at 9. Approximately 1,000 people currently live in Southtown. Doc. 22 at ¶ 22. The vast majority of the residents, including the plaintiffs, are African-

---

[2] The facts taken from the Amended Complaint are assumed true and construed in the light most favorable to the plaintiffs. The court also considers facts taken from declarations the defendants submitted in support of their motions to dismiss, but only considers those facts for purposes of determining if the court has subject matter jurisdiction over the plaintiffs' claims.

American, and many of the residents are disabled or live in single-parent households. *Id.* at ¶¶ 6-10, 22.

HABD hired a Camiros, Ltd. in 2014 as a "planning coordinator" to help HABD formulate a strategy for the redevelopment of Southtown. Doc. 26-1 at ¶ 6. In 2015, HABD announced that it would apply for a $30 million Choice Neighborhoods grant through the U.S. Department of Housing and Urban Development ("HUD") to redevelop Southtown. Doc. 22 at ¶ 30. The Choice Neighborhoods program is a competitive grant program dedicated to improving distressed public housing by focusing in part on "replacing distressed housing with quality, well-maintained, mixed-income housing." *Id.* at ¶ 31; Doc. 1-3 at 1. According to the plaintiffs, the focus on mixed-income housing leads to unfair and discriminatory housing practices and causes displacement of low-income residents. *See* doc. 22 at ¶ 28.

HABD issued a request for proposals ("RFP") on June 30, 2016 to solicit proposals from potential developer partners for the redevelopment. Docs. 26-1 at ¶ 8; 26-2; *see also* doc. 22 at ¶ 35. The RFP indicates that one of HABD's goals for the redevelopment of Southtown is to create a mixed-income community. *See* doc. 26-2 at 7, 9. The plaintiffs assert that the RFP process "was riddled with improprieties" in part because HABD amended the RFP twice without cause in order to benefit Southside and because other developers with "more experience in

managing public housing residential redevelopments . . . were rejected without justification." Doc. 22 at ¶¶ 35, 36(c); *see also* Docs. 26-3 and 26-4.

In January 2017, HABD announced that it selected Southside as its developer partner for the Southtown redevelopment project. Docs. 22 at ¶ 32; 26-1 at ¶ 10; 28 at 6, ¶ 3. Since that time Southside and HABD have negotiated a memorandum of understanding that broadly defines the business relationship between the two parties, doc. 26-1 at ¶ 10, and they have discussed the terms for the negotiation of a "Master Development Agreement," which will "require the preparation of a Comprehensive Redevelopment Plan" for Southtown. Doc. 28 at 6-7, ¶ 4. Southside has also drafted a "Preliminary Pre-Development Schedule" that had not been approved by HABD as of November 1, 2017. *Id.* at 7, ¶ 7. Under the draft Preliminary Pre-Development Schedule, the Master Development Agreement and Comprehensive Redevelopment Plan are to be completed in 2018. *Id.*

The redevelopment process for Southtown has not been transparent for the plaintiffs and residents of Southtown, and the plaintiffs assert that HABD and Southside have not engaged the residents in the process so far. Doc. 22 at ¶¶ 32-33, 39; *see also* doc. 1-4 at ¶ 7. The plaintiffs also assert that the defendants have ignored or marginalized their concerns, withheld critical information about the proposed redevelopment, and held redevelopment planning meetings at locations

the residents could not easily access. Doc. 22 at ¶¶ 32, 36. According to the plaintiffs, "the proposed redevelopment plan submitted by Southside [] and approved by HABD and the City" will have a disparate impact on African Americans, displace a substantial number of Southtown residents, increase racial segregation in Birmingham, violate fair housing laws, and fail to affirmatively further fair housing. *Id.* at ¶¶ 34, 41-43. In addition, the plaintiffs assert that HABD and the City approved the proposed redevelopment plan without the benefit of an impact analysis that would indicate how the redevelopment will affect segregation and fair housing in Birmingham. *Id.* at ¶¶ 34(a), 44.

The plaintiffs have purportedly faced retaliation for opposing the plan to redevelop Southtown. Docs. 22 at ¶¶ 47-51; 1-4 at ¶ 9. After Irene Johnson "became vocal about the redevelopment of Southtown, she received a lease termination notice on her door from [] HABD for non-payment of rent." Doc. 22 at ¶ 47. However, HABD "verbally retracted" the termination notice after Ms. Johnson requested a grievance hearing and provided proof of payment. *Id.* Also in July 2017, Ms. Johnson "was removed as Resident Council president" for Southtown even though she had held the position for over fourteen years and was elected to the position two months earlier for a three-year term. *Id.* at ¶ 50. As the Resident Council president, Ms. Johnson had a key to the community meeting room at Southtown, and she used the room to conduct community meetings. *Id.* at

¶ 49. However, as part of the alleged retaliatory conduct, HABD changed the locks to the meeting room in August 2017, and informed residents that they could not conduct community or neighborhood meetings on Southtown property without prior approval. *Id.* at ¶¶ 49, 51; *see also* doc. 26-8.

The plaintiffs filed this action seeking a preliminary injunction and temporary restraining order to prevent the defendants from proceeding with redevelopment plans and have amended their complaint once. *See* docs. 1; 2; 22. In claims one through eight of the Amended Complaint, the plaintiffs assert claims for alleged violations of the federal Fair Housing Act ("FHA"), the Alabama Fair Housing Law ("AFHL"), Section 504 of the Rehabilitation Act, and Title II of the Americans with Disabilities Act. Doc. 22 at ¶¶ 52-77. The plaintiffs also assert two claims for alleged retaliation in violation of the FHA and AFHL. *Id.* at ¶¶ 78-83.

## III.   ANALYSIS

The defendants have moved to dismiss the plaintiffs' claims on ripeness ground and, as to the retaliation claims, on the sufficiency of the pleadings. The court addresses these contentions below.

### A.     Whether the Plaintiffs' Claims Are Ripe for Judicial Review

The plaintiffs' first eight claims are based on their allegations that the proposed redevelopment plan will increase displacement, decrease the availability of affordable housing in Birmingham, and promote segregation and housing

discrimination in violation of federal and state law. *See* doc. 22 at ¶¶ 33, 36, 39, 41-45, 52-77. The defendants argue that the plaintiffs' claims relating to the proposed redevelopment are not yet ripe for judicial review and, therefore, must be dismissed for lack of subject matter jurisdiction. Docs. 26 at 7-11; 28 at 2-3.[3] The court agrees.

Article III of the U.S. Constitution limits federal court jurisdiction to actual "cases" and "controversies." U.S. CONST. art III, § 2; *Nat'l Advertising Co. v. City of Miami*, 402 F.3d 1335, 1338-39 (11th Cir. 2005). "'This case-or-controversy doctrine fundamentally limits the power of federal courts in our system of government, and helps to identify those disputes which are appropriately resolved through judicial process.'" *Nat'l Advertising*, 402 F.3d at 1339 (quotation omitted). A dispute is ripe for judicial review when "'a plaintiff shows he has sustained, or is immediate danger of sustaining, a direct injury as a result of [the challenged] act." *Id.* (quoting *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir. 1991)) (alteration in original omitted).

---

[3] The defendants submitted extrinsic evidence in support of their motions to dismiss, *see* docs. 26-1 – 26-10; 28 at 6-7, which the plaintiffs ask the court to strike, or, alternatively, the plaintiffs ask the court to convert the defendants' motion into a motion for summary judgment under Rule 56, doc. 34. The defendants' argument that the plaintiffs' claims are not yet ripe for judicial review presents a factual challenge to the court's jurisdiction because it attacks subject matter jurisdiction "in fact, irrespective of the pleadings," *see Morrison*, 323 F.3d at 924, n.5, and the issue can be decided without considering the merits of the plaintiff's claims. When evaluating a factual challenge to subject matter jurisdiction, the court may consider matters outside of the pleadings. *Id.* Thus, the motion to strike, doc. 34, is due to be denied.

On the other hand, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Prod. Co.*, 473 U.S. 568, 580-81 (1985)).

The ripeness doctrine prevents federal courts from wasting their resources by deciding cases prematurely. *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227 (11th Cir. 2006) (citations omitted). The doctrine also protects administrative agencies "'from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Advertising*, 402 F.3d at 1339 (quoting *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997)). Applying the ripeness doctrine requires federal courts to consider two main issues: (1) whether the claim is fit for judicial review; and (2) "'the hardship to the parties of withholding court consideration.'" *Beaulieu*, 454 F.3d at 1227 (quotation omitted). To evaluate those two issues, courts "must consider the following factors: '(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented.'" *Id.* (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

### 1. The plaintiffs' claims are not yet fit for judicial review.

The court begins its ripeness inquiry by considering if the plaintiffs' claims related to the redevelopment of Southtown are fit for judicial review. In addressing this issue, the court notes that the plaintiffs concede that "they have not yet sustained a direct injury" due to the proposed redevelopment. Doc. 33 at 11. Despite this admission, the plaintiffs assert nonetheless that they are "in immediate danger of sustaining an injury." *Id.* The court is not persuaded because the defendants have not yet prepared or approved a redevelopment plan for Southtown, or formulated plans for relocating Southtown's residents during the redevelopment. Docs. 26-1 at ¶ 11; 28 at 7, ¶ 6.[4] Thus, many facts and issues regarding the redevelopment are uncertain, including: (1) where HABD will relocate the plaintiffs during the redevelopment, (2) if and when the plaintiffs and other residents will return to the Southtown community after the redevelopment, (3) how many of the 455 affordable housing units currently at Southtown will be replaced after the redevelopment, (4) what the ratio of affordable to market-rate housing

---

[4] The plaintiffs do not directly dispute that the defendants have not yet formulated or approved a redevelopment plan. *See* doc. 33. Rather, the plaintiffs argue that the "[d]efendants have made clear their intent to redevelop Southtown [] into a mixed-use, mixed-income community," and that the selection of Southside as a developer partner is a "substantial component of the redevelopment." *Id.* at 5-7. These contentions are unavailing. First, in the absence of a redevelopment plan, the defendants' intent to redevelop Southtown into a mixed-income community is not sufficient to show that the redevelopment will harm the plaintiffs or that their claims are fit for judicial review. Next, although HABD's selection of a developer partner may be a necessary step towards the preparation and approval of a redevelopment plan, it is not sufficient to show that the plaintiffs' claims relating to the redevelopment are fit for judicial review. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 729-32 (1998). Moreover, the plaintiffs have not alleged that the selection of Southside caused them any direct harm.

units will be after the redevelopment, and (5) if the redevelopment will deny affordable housing to the plaintiffs, increase segregation in Birmingham,[5] decrease the availability of affordable housing in Birmingham, or will affirmatively further fair housing. *See* doc. 26-1 at ¶ 11. In other words, it is uncertain if the plaintiffs will sustain an injury as a result of the redevelopment, or if the redevelopment will violate federal and state law regarding fair housing and discrimination.

Under these circumstances, deciding the issues presented by the plaintiffs' claims that the proposed redevelopment violates federal and state law would require speculation about contingent future events. As a result, claims one through eight in the Amended Complaint are not fit for judicial review at this time. *See Texas*, 523 U.S. at 300-02; *Pittman v. Cole*, 267 F.3d 1269, 1279 (11th Cir. 2001) (noting that "claims are less likely to be considered 'fit' for adjudication when they . . . require 'speculation about contingent future events'") (quotation omitted).[6]

---

[5] Indeed, the plaintiffs allege that the defendants have not yet conducted an impact analysis to show how the redevelopment will affect segregation in Birmingham, doc. 22 at ¶¶ 34(a), 44, but the plaintiffs did not cite any authority suggesting that the defendants should have conducted such an analysis at this point in the redevelopment process.

[6] To avoid the conclusion that their claims are not fit for judicial review, the plaintiffs point to the prior redevelopment of two HABD public housing projects to show that they are in immediate danger of sustaining injury. *See* doc. 33 at 8-9, 12. The redevelopment of Metropolitan Gardens and Tuxedo Terrace in Birmingham displaced many residents of those communities. *See* doc. 1-2 at 7; Doc. 22-1 at 10-11. Even so, the facts regarding the prior redevelopments are insufficient to show that the potential Southtown redevelopment will displace the plaintiffs, increase segregation in Birmingham, decrease the availability of affordable housing in Birmingham, or violate federal or state law. Likewise, the plaintiffs' contention that mixed-income housing leads to displacement and increased segregation is insufficient to show that the redevelopment will harm the plaintiffs or violate federal or state law.

2. <u>Declining judicial review will not impose any hardship on the plaintiffs as they have administrative avenues through HUD to participate in the process and voice their concerns.</u>

Turning to the second part of the court's ripeness inquiry, the hardship to the parties also weighs in favor of withholding judicial review at this time. Under the applicable federal regulations, HABD must obtain HUD approval before taking "any action to demolish or dispose of" buildings at Southtown. *See* 24 C.F.R. § 970.25(a). The regulations specifically require HABD to develop its application for HUD approval to demolish or dispose of buildings at Southtown "<u>in consultation with</u> residents who will be affected by the proposed action" and to submit copies to HUD of any written comments it receives regarding a proposed demolition or disposition of Southtown. *See id.* at § 970.9(a)(emphasis added). Moreover, HUD will not approve HABD's application if it determines that "[t]he application was not developed in consultation with [] [r]esidents who will be affected by the proposed demolition or disposition . . . ." *Id.* at § 970.29(b).

According to HABD's Vice President for Housing Operations, HABD has not yet applied for HUD approval to demolish or dispose of any buildings at Southtown. Doc. 26-1 at ¶ 11. Thus, under the regulations, the plaintiffs will have an opportunity to participate in the development of HABD's application to demolish or dispose of buildings at Southtown. The plaintiffs may also challenge a proposed redevelopment plan by submitting comments to HABD, which HABD

must then submit to HUD.  In other words, avenues exist for the plaintiffs to participate in the process and to voice their concerns.

The plaintiffs resist this conclusion by arguing that HUD's review process will not sufficiently protect their interests.  Doc. 33 at 7-8.  To support that argument, the plaintiffs assert basically that HABD can bypass the HUD approval process for demolishing or disposing of buildings at Southtown because HABD would only face a nominal penalty if it chooses to do so—i.e., the defendants cannot use HUD funds for the costs of the demolition of Southtown.  *Id.* at 8 (citing 24 C.F.R. §§ 970.25 and 970.7).  The plaintiffs' assertion is unavailing because it is contrary to the terms of the regulations, which explicitly provide that "[u]ntil [HABD] receives HUD approval, [HABD] shall continue to meet its ACC[7] obligations to maintain and operate the property as housing for low-income families."  24 C.F.R. § 970.25(a).  The plaintiffs also contend that HUD's review "does not guarantee [that the] [p]laintiffs will be able to return to Southtown [] or be placed in other adequate safe, and affordable housing."  Doc. 33 at 8.  But, as discussed above, this contention is speculative at this juncture.  Additionally, the

---

[7] The ACC is the Annual Contributions Contract between HABD and HUD that governs federal assistance to the public housing authority.  *See* 24 C.F.R. § 135.5.  The ACC provides in part that HABD "shall develop and operate all projects covered by this ACC in compliance with all the provisions of this ACC and all applicable statutes, executive orders, and regulations issued by HUD," and that HABD "shall also ensure compliance with such requirements by any contractor or subcontractor engaged in the development or operation of a project covered under this ACC." Doc. 39-1 at 7, § 5.

regulations mandate that HABD must offer any resident displaced by demolition or disposition of Southtown "comparable housing that meets housing quality standards [] and is located in an area that is generally not less desirable than the location of the displaced persons." 24 C.F.R. § 970.21.

Put simply, the regulations belie the plaintiffs' contentions that the HUD approval process will not protect their interests adequately. To the contrary, in light of the applicable regulations discussed above, the HUD review process should be sufficient to protect the plaintiffs' interests.

Likewise, the plaintiffs' allegations also fall short of convincing the court that it should interfere at this juncture with HABD and HUD's decision-making process regarding the redevelopment. The court declines to do so because the ripeness doctrine cautions against judicial interference with the agency's decision-making and review process, *see Nat'l Advertising*, 402 F.3d at 1339, especially where, as here, the plaintiffs' claims are based upon future events that may not occur as expected. The court's decision will not impose any hardship on the plaintiffs, who will have the opportunity to make their voices heard in the administrative process by consulting with HABD and submitting comments regarding a proposed demolition or disposition of Southtown. The plaintiffs will also have opportunity to file a legal challenge to any proposed redevelopment plan after the plan is formulated and the effects of the plan can be determined in a

concrete way. Finally, judicial review is inappropriate at this juncture because it could interfere with HABD and HUD's decision-making process and deny HUD the ability to apply its expertise to the potential redevelopment plan for Southtown. As a result, the potential hardship to the parties weighs in favor of withholding judicial review.

Based on the foregoing, the plaintiffs' claims relating to the redevelopment of Southtown are not yet ripe for judicial review,[8] and the first eight claims of the Amended Complaint are due to be dismissed without prejudice under Rule 12(b)(1) for lack of jurisdiction. Accordingly, the plaintiffs' request for a preliminary injunction and temporary restraining order is due to be denied as moot.

## B. Whether the Plaintiffs Have Sufficiently Pleaded their Retaliation Claims

The plaintiffs also assert retaliation claims under the FHA (count nine) and AFHL (count ten) against the defendants based on allegations that (1) on July 26, 2017, and after Ms. Johnson "became vocal about the redevelopment of Southtown, she received a lease termination notice on her door from [] HABD for non-payment of rent;" (2) HABD changed the locks on the community meeting room door at Southtown in August 2017; (3) "Ms. Johnson was removed as

---

[8] Because the court finds that the claims related to the redevelopment are not ripe for judicial review, it need not address the plaintiffs' arguments that they have standing to bring the claims, *see* doc. 33 at 13-15, or the defendants' arguments that the claims related to the redevelopment should be dismissed pursuant to Rule 12(b)(6), *see* doc. 26 at 11-13; doc. 29 at 2-4.

Resident Council president" for Southtown in July 2017 despite her election to the role for a three-year term two months earlier; and (4) on July 28, 2017, HABD informed Southtown residents that they cannot conduct neighborhood or community meetings on Southtown property without prior approval.  Doc. 22 at ¶¶ 47-51, 78-83.  The defendants argue that the court should dismiss the retaliation claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  For the reasons discussed below, the court agrees.

The FHA and AFHA prohibit retaliation against any person for exercising rights granted or protected by the acts, or for encouraging others to exercise their rights under the acts.  *See* 42 U.S.C. § 3617; Ala. Code 1975 § 24-8-8. "To state a claim for retaliatory housing discrimination, a plaintiff must assert that a defendant coerced, intimidated, threatened, or interfered with his exercise of rights granted under the FHA or [AFHA]."  *Philippeaux v. Apartment Inv. and Mgmt. Co.*, 598 Fed. Appx. 640, 644 (11th Cir. 2015) (citing 42 U.S.C. § 3617 and *Dixon v. Hallmark Co.*, 627 F.3d 849, 858 (11th Cir. 2010)).  Additionally, "'[t]o establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action.'"  *Philippeaux*, 598 Fed. Appx. at 644 (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001)).

There are several flaws with the plaintiffs' retaliation claims as currently pleaded. First, the Amended Complaint is devoid of any factual allegations to suggest that either Southside or the City participated in or was responsible for the alleged retaliatory activity. *See* doc. 22. Instead, the plaintiffs allege facts that point solely to HABD. *See id.* at ¶¶ 47, 49, 51. In the absence of any allegations that Southside and the City participated in, or are otherwise responsible for, the alleged retaliatory acts, the plaintiffs have failed to state a viable claim against those defendants, and the retaliation claims against them are due to be dismissed.

Second, it is unclear when the alleged protected activity occurred or even if it is protected activity. The Amended Complaint lists the protected activity as Ms. Johnson "bec[oming] vocal about the redevelopment of Southtown." Doc. 22 at ¶ 47.[9] Even assuming Ms. Johnson's action to speak out against the redevelopment is protected activity under the FHA or AFHL, there are no allegations to indicate when Ms. Johnson spoke out against the redevelopment or if the retaliatory acts occurred within three months of Ms. Johnson's protected activity. *See* doc. 22. Close temporal proximity between Ms. Johnson's alleged protected activity and the alleged retaliatory activity may establish a causal link between the two events, but the proximity must be very close. *Fisher v. SP One, Ltd.*, 559 Fed. Appx. 873, 877-78 (11th Cir. 2014) (citations omitted). Here, the

---

[9] There is no allegation in the Amended Complaint that the other plaintiffs engaged in protected activity. *See* doc. 22. Accordingly, these other plaintiffs cannot pursue a retaliation claim.

only connection alleged between Ms. Johnson's protected activity and the retaliation is that the retaliatory acts occurred in the summer of 2017 after Ms. Johnson's alleged activity. However, the complaint is silent as to when Ms. Johnson purportedly voiced her concerns. Without more, the plaintiffs' allegations are not sufficient to show a causal connection between any protected activity and the alleged retaliatory acts. *See Fisher*, 559 Fed. Appx. At 878 (finding that a three-month disparity between a plaintiff's complaint to HUD and an alleged retaliatory act was not close enough to show causation).

Finally, the retaliation claims fail also because the plaintiffs did not allege conduct on the part of HABD that rises to the level of threats, coercion, intimidation, or interference necessary to rise to an adverse act under the FHA and AFHL. *See Wood v. Briarwinds Condominium Ass'n Bd. of Directors*, 369 Fed. Appx. 1, 2 (11th Cir. 2010) (allegations that the defendant towed the plaintiff's van and fined the plaintiff did not rise to the level of intimidation or threats necessary to support a retaliation claim under the FHA). A look at the alleged retaliatory acts reveals that the plaintiffs have failed to plead that they suffered any adverse action. For example, although Ms. Johnson received a lease termination notice, HABD retracted the notice after Ms. Johnson complained and provided proof of payment of rent. Doc. 22 at ¶ 47. Also, while the plaintiffs allege that HABD changed the locks on the community meeting room door and informed Southtown residents that

all neighborhood or community meetings require prior approval from HABD, the plaintiffs did not allege facts to suggest that HABD has withheld approval of any proposed meeting the plaintiffs wanted to hold at Southtown or failed to open the community meeting room for meetings. *See id.* at ¶¶ 49 & 51. Finally, holding the position of Resident Council president is not a right protected by the FHA or AFHL,[10] and the plaintiffs did not cite any authority suggesting that removing Ms. Johnson from the position would qualify as an adverse action for purposes of a retaliation claim under the FHA or AFHL. Put simply, the plaintiffs have not alleged any actions that rise to an adverse action under the law.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the plaintiffs' first eight claims related to the redevelopment are not yet ripe for review. As to their last two claims for retaliation, the plaintiffs have not stated a viable claim because their allegations are not sufficient to show a causal connection between any protected activity and the retaliatory acts or to show conduct that rises to the level of an adverse act. Accordingly, the court **GRANTS** the defendants' motions to dismiss, docs. 25; 28; 29, and **DENIES** the plaintiffs' motion for injunctive relief, doc. 2, as **MOOT**. HABD's motion for leave, doc. 27, is **GRANTED**, and the plaintiffs' motion to

---

[10] The FHA and AFHL protect any person from discrimination in the sale or rental of a dwelling and "in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of race, color, religion, sex, familial status, or national origin" or because of a handicap. 42 U.S.C. § 3604; Ala. Code 1975 § 24-8-4.

strike, doc. 34, is **DENIED**.  The plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.

   **DONE** the 30th day of January, 2018.

_____
   **ABDUL K. KALLON**
   UNITED STATES DISTRICT JUDGE